Thomas France
NATIONAL WILDLIFE FEDERATION
240 North Higgins, Suite 2
Missoula, MT 59802
(406) 721-6705
(406) 721-6714 (fax)
france@nwf.org

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DEFENDERS OF WILDLIFE, et al., )<br>)<br>Plaintiffs,  )<br>)<br>vs.  )<br>)<br>H. DALE HALL, et al.,  )<br>)<br>Defendants,  )<br>)<br>and  )<br>)<br>SARARI CLUB INTERNATIONAL, )<br>et al.,  )<br>)<br>Defendant-Intervenors  )<br>_____) | Case No. 08-14-M-DWM<br><br>**AMICI NATIONAL WILDLIFE WILDLIFE FEDERATION MEMORANDUM IN RESPONSE TO THE DISTRICT COURT'S SHOW CAUSE ORDER OF JANUARY 28, 2011** |

## INTRODUCTION

On January 28, 2011 this Court issued an Order to Show Cause as to why

this case should not be dismissed as moot.  The Court raised the question of

mootness because the Plaintiffs' claims were premised on the existence of an "experimental" wolf population that the government had designated in 1994 pursuant to 16 U.S.C. § 1539 (j) of the Endangered Species Act (hereafter 10(j)). The Court's order suggested that because experimental wolf population in the Northern Rocky Mountains had grown and intermixed with other wolves, it could no longer be considered an experimental population and therefore the case should be dismissed. Order to Show Cause, p. 8.

The National Wildlife Federation (NWF) seeks to file this brief as amici curae because of its long history in working to restore wildlife generally, and in particular, through use of the experimental population provisions of the Endangered Species Act (ESA). Throughout the 1980s and early 1990's, NWF worked diligently to help create a wolf reintroduction plan for the Northern Rocky Mountains that had more, rather than less, support from local and state governments and the public. Through use of the ESA's 10(j) experimental population provisions, NWF, other NGO's, and the U.S. Fish and Wildlife Service (FWS), developed a management strategy that helped build public support for the reintroduction of wolves into Yellowstone National Park and the wilderness areas of central Idaho.

Similarly, the in the late 1990's, NWF worked closely with the Idaho timber industry, FWS and other agencies and NGO's to design a plan under 10(j) for

reintroducing grizzly bears into central Idaho. While the change in presidential administrations ultimately killed this plan, it was adopted by FWS as a 10(j) regulation in 2000 and remains in the Federal Register to this day. *See* 50 C.F.R. § 17.84(l) (2011), 65 Fed. Reg. 69624 (Nov. 17, 2000). NWF has also engaged in efforts to reintroduce black-footed ferrets, Utah prairie dogs, Mexican wolves and other wildlife species whose management is a matter of significant public and political controversy.[1]

    Based on this experience, NWF is deeply concerned with the larger implications of the Court's Show Cause Order. If the Court determines that changed circumstances can effectively change the status of a wildlife species that has been designated as an experimental population through a formal rule-making, the Court's decision will make it significantly more difficult to use 10(j) as a tool for meeting legitimate local concerns about species management and completely frustrate the reasons why Congress amended the ESA to include 10(j) in 1982.

---

[1] In addition, several other species have benefitted from experimental population status. These include: the Delmarva Peninsula Fox Squirrel in Sussex County Delaware, 50 C.F.R. at17.84(a); the Colorado Squawfish and Woundfin in Gila and Yavapai Counties of Arizona, *Id.* at 17.84(b); the Red Wolf in Dare, Hyde, Tyrrell and Washington Counties of North Carolina, *Id.* at 17.84(c); the Southern Sea Otter in the San Nicolas Island, Begg Rock and the surrounding waters, *Id.* at 17.84(d); the Yellowfin Madtom in the North Fork Holston River, Tellico River, French Broad River, and Holston River, *Id.* at 17.84(e); the Guam Rail in Rota, Commonwealth of the Northern Mariana Islands, *Id.* at 17.84(f); the Whooping Crane in Florida, Colorado, Idaho, New Mexico, and Utah, *Id.* at 17.84(h); the California Condor in Arizona, Nevada, and Utah, *Id.* at 17.84(j); the Spotfin Chub in the Tellico River, Shoal Creek, French Broad River and Holston River, *Id.* at 17.84(m); the Gray Wolf on State and Tribal reservations, *Id.* at 1784(n); the Bolder Darter in Lawrence County, Tennessee and Lauderdale County Alabama, *Id.* at 17.84(o); the Northern Aplomado Falcon in New Mexico and Arizona, *Id.* at 17.84(p); the Dusktytail Darter in the Tellico River, French Broad River and Holston River, *Id.* at 17.84(q); the Smoky Madtom in the Tellico River, *Id.* at 17.84(r); the Slender Chub in the French Broad River, *Id.* at 17.84(s); the Pygmy Madtom in the French Broad River, *Id.* at 17.84(t); the Rio Grande Silvery Minnow in the Rio Grande River, *Id.* at 17.85(u).

AMICI NATIONAL WILDLIFE FEDERATION MEMORANDUM IN RESPONSE TO THE DIRSTRICT COURT'S SHOW CAUSE ORDER OF JANUARY 28, 2011 – Page 3

While it is unclear what effect a decision by this court to dismiss this case as moot would have on the 10(j) rule found in the Code of Federal Regulations, 50 C.F.R 17.84(i), at best such an order would create uncertainty and controversy. Those most concerned with such uncertainty would be people in those local communities that have experimental populations of fish or wildlife in their vicinity. Little good can come from visiting such a situation upon them, especially when the purpose of 10(j) within the ESA is to create certainty for these communities through the 10(j) rulemaking process.

Beyond the impact on local communities that presently provide habitat for experimental populations, a court order declaring this case moot would make it very difficult for the Secretary of Interior to use 10(j) for future reintroductions. The designation of an experimental population is an important tool given to the Secretary of the Interior and FWS. To caste legal ambiguity into the status of any 10(j) population will undermine efforts to conserve and recover the Rocky Mountain wolf and other species protected under this section. For these reasons, NWF respectfully asks the Court not to find this case moot pursuant to the rationale found in the January 28 Show Cause Order.

**I.   CHANGING THE LEGAL STATUS OF WOLVES IN THE NORTHERN ROCKY MOUNTAINS WOULD FRUSTRATE CONGRESS'S INTENT.**

The protections afforded to species listed as threatened or endangered under the ESA are comprehensive and may result in conflict between landowners and developers. *Wyo. Farm Bureau Fedn. v. Babbitt,* 199 F. 3d 1224, 1231 (10th Cir. 2000)  Responding to the political opposition to listing and reintroducing threatened and endangered species, Congress amended the ESA in 1982 to add section 10(j), which created the experimental population status. *Id.* Discussing the difficulties faced when listing and recovering a species, the House Congressional Report provides, "[t]he Committee believes that [experimental population] introductions, if carefully planned and controlled, may be beneficial in securing the restoration of listed species." H.R. Rep. 97-567, at 33 (May 12, 1982).  The section allows FWS greater flexibility in the management of experimental populations while still providing a means to recover listed species.  It was the hope of Congress that 10(j) would promote species recovery while mitigating fears that reintroduction efforts would prevent development projects.  *Id.* at 8.

In adding 10(j) to the ESA, Congress could not have been clearer that it was responding to human concerns with endangered species management and the political pressures such concerns create.  It was not adding the provision to address shortcoming in the protections which the ESA offered listed species, but rather it was adding flexibility to build support within the human community for species recovery programs.

AMICI NATIONAL WILDLIFE FEDERATION MEMORANDUM IN RESPONSE TO THE DIRSTRICT COURT'S SHOW CAUSE ORDER OF JANUARY 28, 2011 – Page 5

Congress sought to create this support by providing regulatory certainty in the management of any experimental population. As the courts have recognized, Congress hoped that "with the clarification of the legal responsibilities incumbent with the experimental populations," private parties and local communities might actually be encouraged to host experiment populations on their lands. *Wyo. Farm Bureau Fedn. V. Babbitt,* 199 F. 3d 1224, 1231-32 (10th Cir. 2000), *citing* H.R. Rep. No. 97-567, at 8 (1982).

This Court's suggestion that "it is unclear" whether removal of 10(j) experimental status requires federal agency action is at odds with both the letter of the law and the intent of Congress that legal responsibilities would be clarified through the adoption of experimental population regulations. As 10(j) expressly states, it is not events on the ground, but determinations made by the Secretary that designate experimental populations. 16 U.S.C. § 1539(j). *See also* H.R. Rep. 97-567 (1982). The Court's formulation is even more problematic given the success of the 10(j) rule in bringing about successful wolf recovery. At a time when wolf populations are well beyond recovery targets, the implication of the Court's approach is that wolves would revert to being managed as endangered or threatened, rather than by more flexible 10(j) regulations.

## II. WHERE FWS HAS DESIGNATED AN EXPERIMENTAL POPULATION, THE COURT SHOULD NOT INTERFERE.

In passing the Endangered Species Act in 1973, ESA, Congress assigned the Secretary of the Interior the duty of listing and recovering threatened and endangered species. Less than a decade later, Congress realized that more flexibility was needed to achieve the ESA's goals, and amended the act in 1982 to allow the Secretary to reintroduced listed species through an experimental population designation. Acting under authority from the Secretary, FWS reintroduced the Northern Rocky Mountain gray wolf as an experimental population in 1994. FWS decided to use an experimentation population designation only after preparing an environmental impact statement on the rule-making and involving the public in the decision. In total, over 160,000 public comments were received, the largest response to any action ever proposed by FWS. http://www.fws.gov/news/NewsReleases/showNews.cfm?newsId=DB8D65FC-E88F-11D4-A17E009027B6B5D3.

Since wolves were reintroduced, the courts have recognized that the boundaries the experimental population area are the critical criteria for determining whether wolves in the northern Rockies area endangered or experimental. In *Wyo. Farm Bureau Fedn. v. Babbit*, 199 F.3d 1224, 1237 (10th Cir. 2000)[2] , the 10th Circuit held that the geographic region defined for the experimental population

---

[2] NWF was a party Defendant in this matter and argued to defend 10(j) as a valid means of species recovery.

AMICI NATIONAL WILDLIFE FEDERATION MEMORANDUM IN RESPONSE TO THE DIRSTRICT COURT'S SHOW CAUSE ORDER OF JANUARY 28, 2011 – Page 7

determined wolf status – wolves found within the experimental population boundaries would be managed pursuant to the experimental population rule, while wolves outside of it would be managed as endangered.

Indeed, the use of boundaries, established through regulation, is an absolutely critical component of management for all species listed under the ESA, whether endangered, threatened or experimental. Within the context of the ESA, animals lose or gain different protected status simply by virtue of moving from one place to another, depending on where FWS, using its expertise, has decided a management boundary should be placed.

## CONCLUSION

Fear that listing a species will result in freezing all development and intrude on private property rights has created political opposition to listing species under the ESA. The clear intent of Congress in passing the 1982 amendment authorizing experimental populations was to provide greater flexibility in recovering species. It was Congress's hope that greater flexibility would reduce opposition to listing a species. Allowing for experimental populations gives elasticity and freedom from the rigid requirements of the Endangered Species Act. The Court should recognize the importance of Congress's intent to promote flexibility in recovering species and not interfere in the experimental status of the Rocky Mountain wolves.

DATED this 8th day of March, 2011.

                                */s/ Thomas France___*
                                Thomas France
                                National Wildlife Federation

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2), I hereby certify that the foregoing brief contains 1,963 words, excluding the caption and certificates, in compliance with the Court's 6,500 word limit. In order to determine the number of words, I relied upon the word count of the word-processing system used to prepare this brief.

                                */s/ Sue Scaggs*_____
                                National Wildlife Federation
                                March 8, 2011